**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**PINE BLUFF DIVISION**

ELAINE J. BROWN                                                                 PLAINTIFF

v.                                    No. 5:04CV0379 JLH

L & P INDUSTRIES, LLC, and
MICHAEL THOMAS HENDRICKSON                                    DEFENDANT

**OPINION AND ORDER**

Plaintiff Elaine Brown brought an action against Defendants L & P Industries, Inc. ("L & P"),

and Michael Thomas Hendrickson, claiming violations of both the Fair Labor Standards Act of 1938,

29 U.S.C. § 201, *et seq*. ("FLSA") and Arkansas state law.  The case is now before this Court on

cross-motions for partial summary judgment relevant to the FLSA claims.  For the following reasons,

both motions are granted.

A court should grant summary judgment when "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter

of law."  FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The party moving for summary judgment bears the initial responsibility of informing the district

court of the basis of its motion and identifying the portions of the pleadings, depositions, answers

to interrogatories and admissions on file, together with the affidavits, if any, that demonstrate the

absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)*;

Group Health Plan, Inc. v. Philip Morris USA, Inc.*, 344 F.3d 753, 763 (8th Cir. 2003).  When the

moving party has carried its burden under Rule 56(c), the non-moving party must "come forward

with 'specific facts showing that there is a *genuine issue for trial*.'"  *Matsushita Elec. Indus. Co. v.*

*Zenith Radio*, 475 U.S. 574, 587 (1985) (quoting Fed. R. Civ. P. 56(e)).  The non-moving party sustains this burden by showing that there are "genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.  When a non-moving party cannot make an adequate showing on a necessary element of the case on which that party bears the burden of proof, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.  In deciding a motion for summary judgment, the Court must view the facts and inferences in the light most favorable to the party opposing summary judgment. *Boerner v. Brown & Williamson Tobacco Corp.*, 260 F.3d 837, 841 (8th Cir. 2001) (citing *Rabuska v. Crane Co.*, 122 F.3d 559, 562 (8th Cir. 1997)).  If the evidence would allow a reasonable jury to return a verdict for the non-moving party, summary judgment should be denied. *Derickson v. Fidelity Life Assoc.*, 77 F.3d 263, 264 (8th Cir. 1996) (citing *Anderson*, 477 U.S. at 248).

## I.

Brown worked for L & P, a company that manufactures furniture.  Brown initially worked in a position in which she was paid hourly and received overtime pay at a rate of one and one-half times her basic rate of pay for all hours in excess of 40 per week.  She was promoted to the position of Finish Line Supervisor in 1999.  After her promotion, L & P still paid Brown as an hourly employee, but stopped paying her the higher rate, "time and a half," for overtime (hours worked in excess of 40 per week).  L & P thus paid Brown at the same hourly rate regardless of the number of hours she worked each week.

During the years that Brown worked there, L & P used an electronic time clock connected to a computer to record the hours its employees worked.  Employees were to "clock in" at work and

"clock out" when they took a morning break, ate lunch, or left work.  At the end of each two-week pay period, L & P's Office Manager, Donna Kling, would download the time data from the time clock to the computer and print a time-clock record of the employees' work time.  Before submitting these records for payment, however, Kling would "adjust" the employees' time-clock records by manually marking through the work hours shown and deducting various amounts of time.  The employees were thus paid for fewer work hours than reflected on the time-clock records.

In their depositions, Kling and Hendrickson, L & P's owner, testified that time was deducted from the employees' working hours or their time-clock records were otherwise altered for a variety of reasons.  For example, if an employee forgot to "clock in" or "clock out," the times that the employee began or stopped working on that date could be written in.  Most often, however, time was deducted from the time-clock records to ensure that employees were paid only for the "approved" hours for which L & P wished to compensate them, regardless of the number of hours the employees actually worked.  Specifically, L & P's policy was that a working day was eight hours, which ran from 6:00 a.m. to 2:45 p.m., allowing time off for a morning break and lunch.  If an employee began working early or continued working late, his or her time-clock record was "adjusted" to reflect the approved 6:00 a.m. to 2:45 p.m. workday.  The employee was paid for any additional time actually worked only if Ms. Kling determined, in her discretion, that some or all of the additional time had been approved by a supervisor or was otherwise warranted.

Employees were also required to "clock out" for a mandatory 15-minute morning break and a lunch break.  If an employee did not do so, Ms. Kling would deduct time from the employee's time-clock record, regardless of whether the employee took a break or had an uninterrupted break, free of work duties.  Ms. Kling did not track these adjustments on a daily basis, but made them all

at the end of each two-week pay period.  Ms. Kling testified, however, that she tried to be fair and that if an employee disagreed with the number of hours for which he or she was paid during a pay period, the employee could discuss the situation with Ms. Kling and she might give the employee credit for the disputed time.

Because L & P pays its hourly employees by 15-minute increments, L & P also employed a practice of "rounding" each employee's total daily working time to correspond to a 15-minute increment.  L & P did not add up its employees' time for each pay period and then round the final number.  Ms. Kling rounded the employees' work time for each day.  Ms. Kling also testified that she did not follow a mathematical formula in doing so.  For example, 5 hours and 39 minutes was not automatically rounded up to 5 hours and 45 minutes.  Instead, Ms. Kling decided how to round off each employee's time "based on [her] knowledge of that employee."

After Brown's 1999 promotion to Finish Line Supervisor, she complained to numerous L & P administrative and supervisory personnel about L & P's failure to pay her time and a half for her overtime.  Specifically, Brown testified that she addressed the issue with Kling as well as David Hyatt, the Plant Manager; Hendrickson's father, who operated L & P before Hendrickson took over; and Hendrickson himself.  Hendrickson testified that L & P did not pay Brown time and a half for overtime because he and his father had believed that L & P was not legally required to do so.

In September, 2004, L & P changed its position and began paying Brown for overtime at a rate of time and a half.  Within a few weeks, however, Brown was terminated.  Defendants assert that Brown was fired for threatening to physically harm a fellow employee.  Brown admits that she made the threatening statements, but contends that other employees who engaged in similar conduct were not fired and that the real reason for her termination was that she had complained about not

4

receiving overtime pay and threatened to contact the Department of Labor.

Brown filed this lawsuit on October 22, 2004, claiming damages for both past-due overtime pay and retaliatory discharge in violation of the FLSA.  Brown now moves for partial summary judgment as to her FLSA claim for damages relating to the unpaid overtime, and Defendants move for partial summary judgment as to the retaliation claim.  Each motion is addressed separately below.

## II.

### A.    Brown's Claim for Overtime Compensation

Brown's motion for partial summary judgment involves four separate issues: (1) whether a genuine issue of disputed fact exists as to Brown's actual damages, *i.e.*, the amount of compensation due for Brown's overtime hours; (2) whether the applicable statute of limitations is two or three years; (3) whether Brown is entitled to liquidated damages in an amount equal to her actual damages; and (4) whether Hendrickson is personally liable for Brown's damages.

#### 1.    Actual Damages

Defendants concede that, under the FLSA, Brown was entitled to overtime pay at a rate of one and one-half times her basic rate of pay and that their denial of such compensation was in violation of the law.  *See* 29 U.S.C. § 207(a)(1) ("no employer shall employ any of his employees . . . for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed").  Brown's regular rate of pay and the number of hours for which she was actually paid at this rate are not in dispute.  The parties disagree, however, on the method by which the total number of working hours for which Brown is due overtime compensation should be calculated and whether Defendants are entitled to an offset against the actual damages due

for a set of furniture given to Brown.

   a.  Number of Work Hours for Which Brown is Due Compensation

  As explained below, Brown has produced evidence of the number of hours she worked and the amount of compensation due her.  Defendants deny the accuracy of this amount and insist that a genuine issue of disputed fact exists as to the amount of Brown's damages.  Defendants, however, have offered only bald denials and assertions, not evidence, to support their position, and "mere allegations or denials" are insufficient to withstand a motion for summary judgment.  *Krenik v. County of Le Seur*, 47 F.3d 953, 957 (8th Cir. 1995).  A careful examination of the evidence and relevant law reveals that no genuine issue of fact exists as to Brown's actual damages and Brown is entitled to judgment as a matter of law.

   i.  Brown's Time-Clock Records

  Brown seeks overtime compensation for all hours in excess of 40 per week shown on her time-clock records at a rate of time and a half, minus the payment she has received for some of those hours at her regular rate of pay.[1]  Defendants argue, however, that the number of hours in excess of 40 per week for which Brown should receive overtime compensation are the "adjusted," *i.e.*, reduced, hours for which L & P has already paid her at her regular rate.  Defendants thus contend that Brown is owed only the "premium," or the additional one-half of her regular pay rate, for those reduced hours, and that Brown should receive no compensation for any additional hours shown on her time-clock records.

  The issue is further complicated by the fact that L & P did not regularly maintain the records

---

[1] L & P also paid Brown at the full rate of time and a half for some hours worked in excess of 40 per week during the last two weeks of Brown's employment.  Brown has noted this and properly deducted these amounts from her requested damages.

6

of its employees' work hours.   L & P produced time-clock records for less than half of the workweeks relevant to this lawsuit, spanning a three-year period.   To calculate her total damages, Brown has determined the average number of hours in excess of 40 per week reflected on her time-clock records and applied this average to the weeks for which no time-clock records are available.

Defendants dispute this method of determining damages.   Defendants contend that Brown's damages should instead be determined by reference to L & P's records of Brown's "adjusted" hours for each *two-week* pay period, which show the number of hours for which Brown was actually paid, at her regular rate, in excess of 80 hours for the two-week period.   Defendants seek to calculate the number of hours in excess of 40 per week by simply dividing the total time by 2.

This Court rejects Defendants' contention for three reasons.   First, the FLSA mandates overtime pay for all hours in excess of 40 per week, not for hours in excess of 80 each two weeks. *See* 29 U.S.C. § 207(a)(1).   Under Defendants' calculation method, for example, if Brown worked 58 hours one week and 22 hours the next week, she would receive no overtime compensation because her total time would not exceed 80 hours for the two-week pay period.   The FLSA is clear, however, that L & P would owe Brown overtime pay at the rate of time and a half for 18 hours, because the week she worked 58 hours would include 18 hours in excess of 40.   Defendants' two-week calculation method is thus improper as a matter of law.

Second,  Defendants object to Brown's calculation of damages because she applied data from the weeks for which her time-clock records were available to determine her working hours for the weeks for which no such records now exist.   The problem with this argument is that the missing time-clock records are unavailable because Defendants failed to keep proper records as required by law.   Employers subject to the FLSA are required to "maintain and preserve"  for at least three years

records of the "[h]ours worked each workday and total hours worked each workweek" for each employee. 29 C.F.R. § 516.2(a)(7), 516.5(a).  Had Defendants done so, Brown's records would have been available for the entire time period in question and Brown would have had no need to average her hours to fill in the gaps.  An employer who has not kept records as required by the FLSA "cannot be heard to complain that there is no evidence of the precise amount of time worked."  *Wirtz v. First State Abstract & Ins. Co.*, 362 F.2d 83, 88 (8th Cir. 1966).  In this circumstance, it is sufficient if the plaintiff produces evidence of the amount of that work "as a matter of fact and reasonable inference."  *Id.*; *see also McLaughlin v. Ho Fat Seto*, 850 F.2d 586, 589 (9th Cir. 1988) (where an employer fails to maintain accurate payroll records, the employee carries his burden under the FLSA by showing he performed work for which he was improperly compensated and produces some evidence of the amount of that work "as a matter of just and reasonable inference").  Brown has met her burden of establishing the total amount of time she worked by her testimony and by reference to the available time-clock records, as one may reasonably infer that she worked similar hours, on average, during most weeks.  Defendants cannot now benefit from their own failure to comply with the law by denying Brown the use of her available time-clock records and insisting that their adjusted records must be used.

Finally, the Court rejects Defendants' contention that Brown's damages should be calculated according to her "adjusted" work hours, as opposed to the hours shown on her time-clock records.  As discussed in the following section, Brown has produced evidence that the time-clock records are an accurate reflection of her work hours.  While Defendants insist that these records may not be accurate and thus should not be followed, they offer no evidence to support their assertions.

    ii.       L & P's Adjustment of Time-Clock Records

8

Brown states in her affidavit that the time-clock records are the only accurate and reliable records of her work time.  In his deposition, Hendrickson also stated that, for a particular pay period, the time-clock record would be the most accurate record of an employee's time.  Defendants now argue, however, that Brown's overtime hours are in dispute because L & P "adjusted" Brown's time-clock records and paid her accordingly.  The evidence of L & P's "adjustments" to its employees' time-clock records, however, do not create a genuine issue of fact as to the number of hours for which Brown is owed compensation.  As noted above, L & P altered employee time records for a variety of reasons, including reducing employees' hours to correspond with L & P's policies regarding its eight-hour work day, morning breaks, and lunch times; rounding employees' work hours to 15-minute increments; and documenting the time that an employee began or stopped working if he or she forgot to clock in or out.  As explained below, most of L & P's policies of adjusting its employees' time records were in violation of the FLSA and, in any event, Defendants have shown no evidence as to why any particular changes were made to Brown's time-clock records or that she failed to work the hours reflected those records.

First, even assuming that Brown actually took a 15-minute break each morning[2] and did not clock out during this time, such a brief break time cannot properly be deducted from her work hours. "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry.  They promote the efficiency of the employee and are customarily paid for as working time."  29 C.F.R. § 785.18.  Accordingly, such break periods "*must* be counted as hours worked." *Id.* (emphasis added).  Any evidence that Brown's time-clock records were adjusted for breaks

---

[2] Brown testified in her affidavit, however, that she often did not receive such a break uninterrupted by work duties, and Defendants have offered no evidence to the contrary.

therefore does not serve to reduce the number of hours of overtime for which Defendants now owe her compensation.

Second, Brown states in her affidavit that she often did not receive an uninterrupted lunch break, and Defendants have produced no evidence to the contrary.  While "[b]ona fide meal periods are not worktime," employees "must be completely relieved from duty for the purposes of eating regular meals." 29 C.F.R. § 785.19(a).  Aside from the fact that L & P was entitled to deduct lunch breaks from Brown's working hours only if she was completely relieved of all duties during that time and failed to clock out, however, L & P has produced no evidence that any of the time adjustments on Brown's records were actually for bona fide lunch periods.  The "adjustments" marked on Brown's time-clock records are simply in the form of slashes through the hours shown with Kling's handwritten insertion of reduced times.  Kling did not note her reasons for such reductions on any of the time-clock records.  Kling stated that she could not tell from looking at the records why any particular changes were made on any particular date, and Hendrickson gave similar testimony.

Third, both Kling and Hendrickson testified that, because L & P's scheduled workdays were usually eight hours, employees who worked longer hours typically had their time records "adjusted" so that they were paid for only eight hours.  Federal law, however, does not allow an employer to refuse payment for hours actually worked, even if the work time was not authorized.

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed.  It cannot sit back and accept the benefits without compensating for them.  The mere promulgation of a rule against such work is not enough.  Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.  Thus, even assuming that some of Kling's reductions of Brown's hours were for unauthorized work hours, such reductions were not proper and, as a matter of law, cannot serve

to reduce the numbers of hours for which Defendants now owe Brown compensation.

Fourth, Kling testified that she rounded all employees' time to correspond to 15-minute increments. "[T]his practice of computing working time will be accepted, provided that it is used in such a manner that it will not result, over a period of time, in failure to compensate the employees for all the time they have actually worked." 29 C.F.R. § 785.48. Because Kling's method of rounding was "based on [her] knowledge of [each] employee" rather than a mathematical formula, L & P's practice of rounding its employees' work time may not have comported with the requirements of the FLSA. If so, Defendants cannot rely on their own illegal practice as justification for reducing Brown's hours. If L & P's rounding practice was proper, on the other hand, it would necessarily have no effect on the amount of work time for which L & P owed an employee payment. Accordingly, the evidence of L & P's rounding practice does not show that Brown is actually owed payment for fewer working hours than reflected on her time-clock records.

Fifth, Kling and Hendrickson both testified that an employee's time-clock record might be corrected if the employee forgot to clock in or clock out at the beginning or end of a work period. Such a correction might be proper if it served to document an employee's actual work hours. Defendants have produced no evidence that any corrections for this purpose were actually made to Brown's time-clock records, however, or that, if such corrections were made, the result would render Brown's calculation of damages inaccurate.

In short, Brown stated in her affidavit that the time-clock records are an accurate reflection of her work hours, and Hendrickson's own testimony supports this assertion. The remaining evidence presented shows only that Defendants paid Brown less than the number of hours reflected on her time-clock records, *not* that she failed to work those hours. As a matter of law, Brown is

entitled to payment for all hours worked, including payment at time and a half for all hours in excess of 40 per week.  Defendants' desire to pay her less does not serve to create a genuine issue of fact as to the number of hours for which Brown is owed proper compensation.

        b.      L & P's Offset Claim

While insisting that they had believed that Brown was not legally entitled to overtime compensation, Defendants offer the incongruous argument that Brown was given a set of bedroom furniture as a form of compensation for her overtime hours.  The facts surrounding that transaction are not in dispute.  Brown testified in her deposition that she spoke with Hendrickson about not receiving time and a half for overtime.  Because Hendrickson refused to pay her the overtime compensation she was due, Brown asked for a set of bedroom furniture.  Regarding this transaction, Brown was asked, "[Y]ou accepted [the furniture] in exchange for not getting paid time and a half?"  Brown replied, "I guess so."  Hendrickson testified in his deposition that he had believed that Brown was not entitled to overtime compensation and that he did not remember giving her any furniture. Hendrickson did not deny that it happened, however, and stated that L & P occasionally gave furniture to good employees.  Defendants now argue that Brown "released Defendants from liability for overtime pay, or created a setoff," by accepting the furniture.  This argument is without merit and fails regardless of whether Brown's acceptance of the furniture is characterized as a waiver, release, setoff, or accord and satisfaction.

First, the Supreme Court's "decisions interpreting the FLSA have frequently emphasized the nonwaivable nature of an individual employee's right to a minimum wage and to overtime pay under the Act." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 740, 101 S. Ct. 1437, 1444-45, 67 L. Ed. 2d 641 (1981).  "FLSA rights cannot be abridged by contract or otherwise waived

12

because this would 'nullify the purposes' of the statute and thwart the legislative policies it was designed to effectuate." *Id.* (quotation omitted). Accordingly, Brown could not waive her right to receive time and a half for overtime even if she had wanted to, and L & P is not released from its obligation to pay her in accordance with the law.

Second, even if Brown could waive her FLSA rights, L & P has produced no evidence that she intended to do so. "Waive" means to abandon, renounce, surrender, or voluntarily give up a claim, privilege, or right. BLACK'S LAW DICTIONARY 1611 (8th ed. 2004). "The party alleged to have waived a right must have had both knowledge of the existing right and the intention of forgoing it." *Id.* Similarly, a "release" is "the act of giving up a right or claim to the person against whom it could have been enforced." *Id.* at 1315. A release is a form of contract, governed by principles of contract law, and must include some expression sufficient to show that one party *intended* to discharge the other. *Little Rock Packing Co. v. Mass. Bonding & Ins. Co.*, 262 F.2d 327, 329-30 (8th Cir. 1959). The evidence in this case shows neither that Brown voluntarily gave up her overtime pay nor intended to release L & P from its obligation to pay her this debt. Defendants emphasize that Brown said she "guessed" she took the furniture "in exchange for not getting paid time and a half." This was not a situation, however, where Brown had a choice to either get paid or take furniture instead, and Brown did not ask for furniture instead of monetary payment. Brown had no choice in the matter – Defendants had made it clear that she was not going to get paid for her overtime, and Brown asked for some furniture only after Defendants refused to pay her the money she was owed. In short, Defendants have not established that Brown voluntarily or intentionally gave up her right to overtime compensation, a right that Defendants insisted she did not even have at the time.

Third, even if the furniture transaction could be characterized as an accord and satisfaction

for the overtime debt, such an agreement between Brown and her employer could not stand under the FLSA.  Ordinarily, employers and employees may resolve their own disputes and an agreement (the accord), followed by payment (the satisfaction), would bar a later lawsuit.  *Walton v. United Consumers Club, Inc.*, 786 F.2d 303, 306 (7th Cir. 1986).  The FLSA, however, "is designed to prevent consenting adults from transacting about minimum wages and overtime pay."  *Id.*  Under the FLSA, claims by employees for back wages can be settled in only two ways: (1) the Secretary of Labor is authorized under 29 U.S.C. § 216(c) to supervise payment of unpaid wages to employees, and (2) employees may bring suit against their employers for such wages pursuant to 29 U.S.C. § 216(b).  *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1352-53 (11th Cir. 1982).  If an employee brings a private action and presents to the district court a proposed settlement, the district court may enter judgment "after scrutinizing the settlement for fairness."  *Id.* at 1353.  "The idea is that federal supervision replaces private bargaining . . . ."  *Walton*, 786 F.2d at 306.  Thus, the FLSA bars private settlements of disputes about unpaid wages, such as Brown's supposed agreement to take furniture in satisfaction for unpaid overtime.  *See id.*

Finally, Defendants cannot claim the value of the furniture as a setoff against the unpaid overtime owed to Brown.  Under the FLSA, "an employer may include in employee wages 'the reasonable cost . . . of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees . . . .'"  *Morrisroe v. Goldsboro Milling Co.*, 884 F. Supp. 192, 194 (E.D. N.C. 1994) (quoting 29 U.S.C. § 203(m)).  An employer thus may be entitled to set off the value of certain goods provided to an employee under two conditions: (1) the employer has complied with the record-keeping provisions

14

of 29 C.F.R. § 516.27[3] to demonstrate the reasonable cost of the employer's expenditures, and (2) the goods furnished were of a kind "customarily furnished by such employer to his employees." *Id.* at 195. Defendants have produced no evidence that either of these requirements was met. As to the first requirement, Defendants have produced no records demonstrating the reasonable cost of the furniture given to Brown. Defendants instead argue that "[a]t minimum, [Brown's] request for and receipt of the bedroom furniture can be used to preclude any award of overtime compensation up through the date the bedroom furniture was given." The Court declines to speculate or assume that the cost of the furniture was equivalent to the amount of overtime compensation due. As to the second requirement, the evidence does not show that furniture was "customarily furnished" by L & P to its employees. To the contrary, Hendrickson testified that L & P "occasionally" gave furniture to "good employees." The evidence thus shows that furniture was not given to employees as a part of their wages, but was given only to certain employees as an occasional bonus. Fringe benefits and bonuses may not be credited against overtime pay required by the FLSA. *Dunlop v. Gray-Goto, Inc.*, 528 F.2d 792, 794 (10th Cir. 1976).

## 2. Statute of Limitations

An action for unpaid overtime compensation under the FLSA is "barred unless commenced within two years after the cause of action accrued." 29 U.S.C. § 255(a). The statute provides an exception to this rule, however, as "a cause of action arising out of a *willful* violation may be commenced within three years." *Id.* (emphasis added). Brown asserts that Defendants acted willfully and that she is therefore entitled to overtime pay for the three years preceding her lawsuit.

---

[3] "[A]n employer who makes deductions from the wages of employees for 'board, lodging, or other facilities' . . . furnished to them by the employer . . . shall maintan and preserve records substantiating the cost of furnishing each class of facility . . . ." 29 C.F.R. § 516.27(a).

Defendants argue that they did not act willfully and that Brown can therefore collect her unpaid overtime wages for only two years.

An FLSA violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133, 108 S. Ct. 1677, 1681, 100 L. Ed. 2d 115 (1988). This standard requires more than mere negligence or a good-faith but erroneous assumption that a pay plan complied with the FLSA. *Id.* at 135. Defendants argue that their conduct cannot be deemed willful because they relied in good faith on the assumption that Brown, though paid hourly, was exempt from the requirement of overtime pay as an "executive" employee because her position involved managerial duties.[4] Specifically, Defendants allege that Hendrickson's father, who ran L & P before Hendrickson took over, stated that Brown was an exempt employee. Defendants assert that they relied on this erroneous information because Hendrickson's father had "worked in the personnel and human resources departments of large corporations." Even assuming that Hendrickson's father had at one time believed that Brown was not legally entitled to overtime compensation and that Defendants

---

[4] The minimum wage and maximum hour requirements of the FLSA do not apply to "any employee employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). An "employee employed in a bona fide executive capacity" means "any employee: (a) Whose primary duty consists of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof; and (b) Who customarily and regularly directs the work of two or more employees therein; and (c) Who has the authority to hire or fire other employees or whose suggestions and recommendations . . . will be given particular weight; and (d) Who customarily and regularly exercises discretionary powers; and (e) Who does not devote more than 20 percent . . . of his hours of work in the workweek to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) . . . ; and (f) *Who is compensated for his services on a salary basis* . . . ." 29 C.F.R. § 541.1 (2004) (emphasis added). Defendants now concede that Brown never qualified for the "executive exemption," even assuming that her job duties met the qualifications listed, because she was not paid on a salary basis.

initially accepted his decision on this matter,  the evidence shows that Defendants did not innocently and naively continue to rely on this belief over the five-year period that Brown worked as an hourly employee.

Brown has testified that over the years she complained about L & P's failure to pay her time and a half for overtime on numerous occasions to Hendrickson, Hendrickson's father, Kling, Hyatt, and other L & P employees.  Hendrickson denies that Brown ever addressed the issue of overtime compensation with him directly.  Even assuming, as this Court must for purposes of summary judgment, that Hendrickson's statement is true, the evidence indicates that Hendrickson nevertheless knew that Brown had raised the issue with L & P.  Hendrickson initially stated in his deposition that he was aware that Brown thought she was entitled to overtime compensation because in 2001 or 2002 his father had said that Brown "clearly met the definition of exempt, in terms of managing employees, making decisions, responsibilities and so forth."  Hendrickson later backpedaled on this issue and said that it was "hard for [him] to know what he was aware of," but that he had been under the impression "that it had been resolved and that [Brown] had agreed it had been resolved."

Regardless of whether Brown addressed the overtime issue with Hendrickson, Brown's testimony that she complained to other managerial personnel at L & P, including Kling, Hyatt, and Hendrickson's father, is uncontradicted. In addition, Kling testified to discussing the issue of Brown's overtime compensation with both Brown and Hendrickson's father while he was in charge of L & P.  Kling stated that at one point she included overtime compensation at the rate of time and a half on Brown's paycheck, believing that to be the proper practice, but Hendrickson's father ordered her to stop.  Kling informed Hendrickson's father that Brown was supposed to be paid time and a half for overtime.  The reason that Hendrickson's father then gave Kling for refusing to pay

Brown time and a half was that Brown "agreed to straight time" – *not* that Brown was exempt from overtime compensation as an "executive" employee.

Throughout this time period, neither L & P nor Hendrickson consulted an attorney or the Department of Labor to verify whether Brown was, in fact, exempt. Hendrickson, who is an attorney, did not even bother to perform some minimal amount of legal research on the issue before Brown filed suit. He further testified that had Brown never filed suit, he never would have researched the issue.

Other federal courts, faced with similar facts, have held conduct of the type displayed here to be willful as a matter of law. For example, *Hardrick v. Airway Freight Sys., Inc.*, 63 F. Supp. 2d 898 (N.D. Ill. 1999), involved an employer that refused to pay its hourly employees time and a half for overtime. Instead, the employees were paid at their regular hourly rate for work hours in excess of 40 per week. *Id.* at 900. The employer in *Hardrick* asserted that its employees should complete their job duties in 40 hours per week and that it "allowed overtime only if employees agreed to receive their regular hourly rate for such hours." *Id.* And, like Defendants in this case, the employer in *Hardrick* neither consulted an attorney nor otherwise conducted any investigation as to whether its overtime policy was legal, even though it knew that the FLSA contains provisions regulating overtime pay. *Id.* at 900-01, 904. The *Hardrick* court held that the employer's "actions regarding its policy of paying [employees] straight pay for overtime hours were unreasonable and in reckless disregard for the matter of whether such conduct was prohibited by the FLSA." *Id.* at 904.

Another FLSA case, *Reich v. Waldbaum, Inc.*, 52 F.3d 35 (2d Cir. 1995), involved an employer who claimed that its failure to pay hourly employees overtime compensation was due to its erroneous belief that the employees were exempt from the requirements of overtime pay as "bona

fide executives." The district court found that while the employer's contention that its employees were exempt as "bona fide executives" was unreasonable, the employer's conduct did not amount to reckless disregard of the law and thus was not willful because the "duties test" for exemption was likely met, and "there was confusion as to whether deductions for hours not worked would render an employee salaried or hourly." *Id.* at 40. The Second Circuit, however, reversed the district court's holding that the employer's conduct was not willful. *Id.* at 41. Specifically, the *Waldbaum* court stated that "the law was clear at all relevant times that employees compensated on an hourly basis are subject to the FLSA, and the 'bona fide executive' exemption is inapplicable to such employees." *Id.* Hendrickson is an attorney and Defendants hold Hendrickson's father out as having extensive knowledge of personnel issues. Ten years after the *Waldbaum* decision and more than 60 years after enactment of the FLSA, Defendants' claim that they thought that an hourly employee was exempt from the requirement of overtime pay rings hollow.

Even assuming that Defendants initially believed that Brown was exempt from the FLSA's overtime pay requirements, the evidence in this case establishes that Brown and L & P's Office Manager, Kling, raised questions as to this practice and specifically asserted that payment at time and a half was due. Defendants admit that they were aware that overtime compensation is regulated by the FLSA, but did not research the law's specific requirements. In their defense, Defendants correctly point out that a finding of willfulness requires more than an employer knowing that the FLSA "was in the picture." *See McLaughlin*, 486 U.S. at 132-33. In this case, however, Defendants knew much more than that. Moreover, Defendants knew how to seek accurate information on this legal issue, but nevertheless refused, over a period of several years, to make even a minimal effort to do so. Such deliberate ignorance of the law can only be characterized as reckless disregard. The

applicable statute of limitations under 29 U.S.C. § 255(a) is three years, and Brown has established

that she is owed a total of $11,866.77 for overtime hours worked during that time period.

### 3.    Liquidated Damages

Any employer who violates the overtime provisions of the FLSA "shall be liable to the

employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and

in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b).  This award of liquidated

damages is mandatory unless the employer can show both good faith and reasonable grounds for

believing that its actions were not in violation of the FLSA.  *Braswell v. City of El Dorado,*

*Arkansas*, 187 F.3d 954, 957 (8th Cir. 1999).  The employer bears the burden of proof on both

points, *Hultgren v. County of Lancaster, Nebraska*, 913 F.2d 498, 509 (8th Cir. 1990), and even if

the required showing is made, remission of damages remains within the sound discretion of the

district court, *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 750 F.2d 47, 51 n.5 (8th Cir. 1984).

The Court declines to reduce or eliminate the mandatory liquidated damages award to which

Brown is entitled because Defendants have proven neither that their belief that Brown was exempt

from the FLSA's overtime requirements was objectively reasonable nor that they acted in good faith.

Defendants argue that their belief that Brown was exempt was objectively reasonable because she

met many of the requirements for this exemption, namely the requirements relating to her job duties.

The law was clear during the relevant time period, however, that this exemption applied only to

employees paid on a salary basis.  *See* 29 C.F.R. § 541.1(f) (2004).  Hendrickson is an attorney and

L & P is an employer that pays the majority of its employees hourly.  The provisions of the FLSA,

having been in effect for over six decades, are widely known and Defendants were in positions such

that a belief that hourly employees can be denied overtime compensation, even if actually held, was

not reasonable.

In addition, Defendants have not shown that they acted in good faith toward Brown. Congress enacted the FLSA for the primary purpose of protecting workers from substandard wages and oppressive working hours. *Barrentine*, 450 U.S. at 739.  When paying an employee hourly, the employer benefits during slow periods as it may have the employee work fewer than 40 hours per week and pay the employee less than a full-time wage.  During busy periods, however, an employee who works over 40 hours per week must receive the benefit of increased payment for the additional workload.  Conversely, salaried employees benefit by receiving full payment during times that the workload may be less than 40 hours, while the employer is relieved of the burden of paying additional wages  when the workload increases.  By paying Brown a straight hourly wage regardless of the number of hours she worked, Defendants sought the best of both worlds for themselves while denying Brown any corresponding benefit.  Even after admitting that Brown was legally entitled to overtime compensation at time and a half, Hendrickson testified that Defendants "shouldn't have paid her any for overtime.  Our mistake, apparently, was that we paid her too much."

Because Defendants have failed to prove either that their erroneous classification of Brown as exempt was objectively reasonable or that they acted in good faith, they are not entitled to remission of the FLSA's mandatory liquidated damages.  As noted above, Brown is owed $11,866.77 in unpaid overtime compensation. The Court holds that she is also entitled to an equal amount in liquidated damages, for a total of $23,733.54.

### 4.      Hendrickson's Personal Liability

Brown asserts that Hendrickson, as well as L & P, was her employer as defined by the FLSA and that he is therefore personally liable for her damages.  Under the FLSA, the term "employer"

21

includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  Thus, an employee may have several simultaneous employers under this provision.  *Donovan v. Agnew*, 712 F.2d 1509, 1510 (1st Cir. 1983).  "In determining employer status, 'economic reality' prevails over technical common law concepts of agency."  *Id.* (citing *Goldberg v. Whitaker*, 366 U.S. 28, 33, 81 S. Ct. 933, 936, 6 L. Ed. 2d 100 (1961)).  A corporate officer with a significant ownership interest and operational control of significant aspects of the corporation's day-to-day functions, including employee compensation, is an employer within the meaning of the FLSA.  *Id.* at 1514; *see also Wirtz v. Pure Ice Co., Inc.*, 322 F.2d 259, 262-63 (8th Cir. 1963) (holding that, although the controlling stockholder of a corporation was not an employer under the FLSA in that case, such an individual would be deemed an employer if the context included stock ownership, management, direction, and the right to hire and fire employees).  In such circumstances, the officer and the corporation are jointly and severally liable for unpaid overtime wages.  *Donovan*, 712 F.2d at 1511, 1514.

The evidence in this case is that Hendrickson was the sole owner of L & P and that he controlled its operations.  Although Hendrickson lived out-of-state, he maintained telephone contact with L & P personnel on a daily basis.  Hendrickson held final authority over all of L & P's functions, including decisions about employee compensation, and he made the final decision to terminate Brown.  Hendrickson was thus an employer of Brown under the FLSA, and he is personally liable for her unpaid overtime compensation and liquidated damages.

**B.      Brown's Retaliation Claim**

Brown asserts that she repeatedly complained to Hendrickson, his father, and several L & P employees about Defendants' failure to pay her time and a half for her overtime hours.  Brown

further states that she threatened to contact the Department of Labor ("DOL") about this issue during a conversation with Plant Manager David Hyatt in September, 2004, and that she did in fact call the DOL later that month.  Defendants assert that they had no knowledge of this telephone call, however, and Brown has offered no evidence to the contrary.  Brown was terminated on October 1, 2004, and later initiated this lawsuit and filed a complaint with the DOL.

Defendants assert that Brown was fired for misconduct on the job and that the termination decision had nothing to do with Brown's overtime pay.  Furthermore, while Defendants do not concede that Brown complained to them about her lack of overtime pay or that she threatened to contact the DOL, Defendants argue that these activities are not protected under the FLSA's retaliation provision.  Accordingly, Defendants have moved for summary judgment as to this issue.

Employers may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."  29 U.S.C. § 215(a)(3).  "Consistent with its remedial purpose," this section of the FLSA "has been liberally construed." *Saffels v. Rice*, 40 F.3d 1546, 1548 (8th Cir. 1994).  Even so, an unambiguous statute must be enforced as written unless there is clear legislative intent to the contrary. *Haug v. Bank of Am., N.A.*, 317 F.3d 832, 835 (8th Cir. 2003).  "Courts are obligated to refrain from embellishing statutes by inserting language that Congress has opted to omit."  *Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1070 (8th Cir. 2000).

In considering Defendants' motion for summary judgment the Court must accept as true Brown's assertions that she complained to Defendants about her lack of overtime pay, threatened

23

to call the DOL, and actually made such a telephone call before her termination. These activities do not fall within the express language of the FLSA's retaliation provision, however, as the FLSA provides protection only for an employee who has "*filed* any complaint," "*instituted* any proceeding," "*testified*" in a proceeding, or "*served* on an industry committee." *See* 29 U.S.C. § 215(a)(3) (emphasis added).

Brown has not alleged that she did any of the specific activities that are protected by the statute before her termination. First, Brown has not alleged that she testified in any proceeding or served on an industry committee relevant to her FLSA claims. Second, taking as true Brown's statement that she first contacted the DOL in September, 2004, which was before her termination, the evidence shows that she merely asked questions and received general information at that time. She did not actually file a complaint until after her termination. Moreover, even if her telephone inquiry constituted the filing of a complaint under the statute, Brown has produced no evidence that Defendants knew about the call and Defendants expressly deny such knowledge. This activity therefore could not serve as a basis for her retaliation claim even if it was protected by the statute. *See Buettner v. Arch Coal Sales Co., Inc.*, 216 F.3d 707, 715 (8th Cir. 2000) (employee must show that employer had actual or constructive knowledge of protected activity to establish *prima facie* case of retaliation under Title VII of the Civil Rights Act of 1964). Finally, although Brown later filed a formal complaint with the DOL and "instituted a proceeding" by filing this lawsuit, she took both actions after her termination. Thus, like the telephone inquiry, these actions cannot serve as a basis for her retaliation claim.

Brown's strongest argument is that § 215(a)(3) should be construed to cover her complaints about lack of overtime pay and threatened contact with the DOL as protected activities. In support

of this argument, Brown cites *Saffels v. Rice*, 40 F.3d 1546 (8th Cir. 1994). *Saffels* involved an

employer who believed that two employees had reported workplace violations to the Occupational

Health and Safety Commission and the DOL. *Id.* at 1547-48. Neither employee had reported any

such violations, but both were terminated after their employer confronted them about these alleged

activities. *Id.* at 1548. Noting that other courts have liberally construed the FLSA's retaliation

provision "in applying it to activity that falls outside the express wording of the statute," the *Saffels*

court held that the FLSA protects employees who are terminated based on the employer's mistaken

belief that the employees have engaged in protected conduct. *Id.* at 1549-50.

The crucial difference in this case and *Saffels*, however, is that the Defendants in this case

never believed that Brown filed a complaint with the DOL or otherwise engaged in protected activity

before firing her. Viewing the evidence in the light most favorable to Brown, Defendants knew only

that Brown had made complaints to Defendants and had threatened to call the DOL. Neither activity

is protected under the statute. *See Ball v. Memphis Bar-B-Q Co., Inc.*, 228 F.3d 360 (4th Cir. 2000)

(FLSA retaliation provision does not extend to intra-company complaints or to anticipated adverse

testimony in a potential court proceeding); *Clevinger v. Motel Sleepers, Inc.*, 36 F. Supp. 2d 322

(W.D. Va. 1999) (oral complaints to supervisor about employer's failure to pay minimum wage is

not a protected activity). Brown has produced no evidence that Defendants knew that she actually

called the DOL or believed that she engaged in any protected activity.

Even if Defendants in fact fired Brown for her complaints about lack of overtime pay and her

threatened contact with the DOL, this behavior, while morally unacceptable, is not prohibited by the

FLSA. *See Ball*, 228 F.3d at 363-64 (plaintiff's allegations that employer fired him in retaliation for

refusing to testify to employer's "version of events" in potential lawsuit described morally

unacceptable, but not illegal, conduct).  Accordingly, Defendants are entitled to judgment as a matter of law as to Brown's retaliation claim.

## CONCLUSION

Brown has established that she is due $11,866.77 for her unpaid overtime.  Defendants have failed to meet proof with proof, and there is no genuine issue of material fact as to this amount.  In addition, Brown is entitled to an equal amount in liquidated damages as a matter of law under the FLSA.  Brown's motion for partial summary judgment as to damages due under the FLSA in the total amount of $24,733.54 is GRANTED.

Brown's complaints about Defendants' failure to pay her overtime and her telephone call to the Department of Labor, however, are not protected activities under the FLSA's retaliation provision.  Defendants' motion for partial summary judgment as to Brown's retaliation claim is therefore GRANTED.

IT IS SO ORDERED this 21st day of December, 2005.


J. LEON HOLMES
UNITED STATES DISTRICT JUDGE